UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| C. W. DOWNER & CO., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BIORIGINAL FOOD & SCIENCE CORP., )<br>)<br>Defendant. )<br>) | Civil Action No. 13-11788-DJC |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                    **March 3, 2014**

## I.     Introduction

Plaintiff C.W. Downer & Co. ("Downer") has sued Bioriginal Food & Science Corp. ("Bioriginal") asserting claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and violation of Mass. Gen. L. c. 93A in connection with Bioriginal's alleged nonpayment of investment banking fees for services to Downer.  D. 8. Bioriginal has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or alternatively, and only as to the c. 93A claim, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  D. 9.  For the reasons set forth below, Bioriginal's motion to dismiss for lack of personal jurisdiction is ALLOWED.

## II.    Burden of Proof and Standard of Review

On a motion to dismiss for lack of personal jurisdiction, Downer bears the burden of establishing that personal jurisdiction over Bioriginal.  Mass. Sch. of Law at Andover, Inc. v.

1

Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). To meet its burden, Downer must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (internal quotations and citation omitted). Under this standard, the court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law, 142 F.3d at 34. It will then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Id.

**III.   Factual Background**

    **A.   Factual Allegations and Proffer of Jurisdictional Evidence**

Downer is Boston-based investment banking firm that provides business advice. Compl., D. 8 ¶ 6. Part of this advice includes identifying other business for clients that may present opportunities for mergers, acquisitions and divestitures. Id. Bioriginal is a Canadian corporation headquartered in Saskatoon, Saskatchewan, Canada which produces nutritional supplements. Id. ¶¶ 2, 7. Bioriginal has no office, phone number or employees in Massachusetts, is not registered to do business and does not have a registered agent here, does not do direct sales marketing to Massachusetts and has no ongoing relationships with customers or potential customers in the Commonwealth. Affidavit of Joseph Vidal, D. 10-1 ¶¶ 4-6.

In March 2009, Bioriginal retained Downer to assist it with the potential sale of the

company. Id. ¶ 8. In September 2008, Crown Capital's Christopher Johnson informed Downer that Bioriginal was considering a sale of the company. Affidavit of Paul Colone, D. 13 ¶ 3. Crown Capital was an investor in Bioriginal, and according to Bioriginal CEO Joseph Vidal, Johnson was Bioriginal's "de facto" chairman. Affidavit of Joseph Vidal, D. 10-1 ¶ 11. Johnson met with Downer representatives in Boston, but subsequent negotiations were conducted via telephone and email. Id. ¶¶ 10, 12. The parties agreed (via the "Letter Agreement") that Downer would act as Bioriginal's "exclusive financial adviser in connection with the potential sale of Bioriginal." Compl. ¶ 9. The parties also agreed that Bioriginal would pay Downer four payments of $20,000 each for Downer's successful attainment of four "milestones:" (1) the execution of the parties' agreement; (2) Downer's completion of the "Information Memorandum;" the first presentation by Bioriginal's management to a prospective purchaser; and (4) "upon receipt of a final offer(s) . . . for a minimum of 50% of the equity of Bioriginal." Id. ¶ 11. The Letter Agreement included a transaction fee and a formula for determining Downer's total fee that established a minimum fee of $420,000. Id. ¶ 15. The Letter Agreement also stipulated that Downer "agree[s] submit to the jurisdiction of the Saskatchewan courts." D. 10-2 at 7.

Downer performed various services for Bioriginal including drafting a memorandum to the Bioriginal board providing an assessment of the divestiture prospects for Bioriginal and identifying a private equity group that was potentially interested in acquiring Bioriginal. Id. ¶¶ 18-19. Nevertheless, Bioriginal secured a purchaser through other channels. Id. ¶¶ 21-22. On April 5, 2013, Westbridge Capital, Ltd. ("Westbridge") announced its acquisition of Bioriginal. Id. ¶ 24. Although Bioriginal agreed to pay the first three milestone payments to Downer, it

refused to pay the final milestone payment or the $420,000 transaction fee.  Id. ¶¶ 12, 25. Bioriginal has asserted that it terminated the Letter Agreement in 2009.  Id. ¶ 28.

## IV.  Procedural History

Downer commenced this action in Suffolk Superior Court on July 1, 2013.  D. 8. Bioriginal removed this action to this Court on July 26, 2013.  D. 1.[1]  Bioriginal filed a motion to dismiss on August 16, 2013.  D. 9.  The Court has now heard the parties on this matter and taken it under advisement.  D. 19.

## V.  Discussion

### A.  Overview of Personal Jurisdiction

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle, 70 F.3d at 1387 (internal quotation marks and citation omitted)).  Accordingly, this Court may only exercise personal jurisdiction within the limits set by the Massachusetts long-arm statute and the Constitution.  Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997).  Because courts construe "the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution," this Court may "turn directly to the constitutional test for determining specific jurisdiction."  Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011).

A court may exercise two types of personal jurisdiction:  general and specific.

---

[1] A defendant's removal of an action does not waive an objection to lack of personal jurisdiction.  In re Lupron Marketing and Sales Practices Litig., 245 F. Supp. 2d 280, 302 (D. Mass. 2003) (citation omitted).

Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  Here, Downer asserts only that the Court has specific jurisdiction over Bioriginal.   D. 12 at 10.

    **B.**    **The Court Does Not Have Specific Jurisdiction Over Bioriginal**

"The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate:  1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances." Pesmel N. Am., LLC v. Caraustar Indus., Inc., 754 F. Supp. 2d 168, 172 (D. Mass. 2010).

    *1.*    *Downer's Claims Are Not Sufficiently Related to Bioriginal's In-State Activities*

The first prong, relatedness, focuses on whether "'the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'"  Astro−Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)) (further citation omitted).  It is a "flexible, relaxed standard."  Id. (internal quotations and citations omitted).

"Questions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 299 (1st Cir. 1999).  "In contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look at the elements of the cause of action and ask whether the defendants' contacts with the forum were instrumental either in the formation of the contract or its breach."  Id.  All of Downer's claims—for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of c. 93A and unjust enrichment-- arise out of Bioriginal's alleged breach of its agreement to pay Downer for its services.  With that said, the Court cannot conclude on this

record that Bioriginal's contacts with Massachusetts were instrumental to the formation of the contract or its alleged breach of that agreement.

Downer argues that its claims are directly related to Bioriginal's in-state contacts because its "de facto" chairman met with Downer in Boston to discuss the possible sale of Bioriginal, the parties had many e-mail and telephone discussions regarding the engagement, Downer performed all of the work under the Letter Agreement in Massachusetts and Bioriginal sent three separate milestone payments to Massachusetts. D. 12 at 10-11. However, at bottom, this lawsuit is arises out of Bioriginal's alleged failure to make payments due to Downer. Accordingly, it is Bioriginal's failure to act in Canada (namely, its failure to transfer funds from there to Massachusetts) that forms the basis of this lawsuit. See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118 (1st Cir. 2006) (noting that "[e]vidence of a defendant's entry into a contractual relation with a plaintiff in another state is relevant to whether the defendant 'reached out' to that state[,] [b]ut the mere fact that a plaintiff entered into a contract with a defendant in the forum state is not in and of itself dispositive of the personal jurisdiction question"). Here, Bioriginal's conduct does not give rise to personal jurisdiction in the forum state. See Walker v. Smith, 257 F. Supp. 2d 691, 695 (S.D.N.Y. 2003) (citing Waldorf Assocs. v. Neville, 533 N.Y.S.2d 182, 185 (1988) (noting that failure to pay a debt payable in forum state insufficient to give rise to minimum contacts)); Milligan Elec. Co. v. Hudson Const. Co., 886 F. Supp. 845, 849 (N.D. Fla. 1995) (noting that "mere nonpayment of a debt in Florida is not sufficient to subject a nonresident defendant to personal jurisdiction") (citations omitted); Rolivia v. Emporium Nostrum, Inc., No. 13-ADMS-10013, 2013 WL 6034920, at *7 (Mass. App. Div. Nov. 8, 2013) (affirming trial court's finding that it had no personal jurisdiction over Florida distributor that

failed to pay debt owed in Massachusetts).

Downer also points out that Bioriginal had numerous conversations over the phone and via email in negotiating the terms of the Letter Agreement and discussing issues related to Downer's representation of Bioriginal. D. 12 at 10. Nevertheless, Downer does not allege that any of these negotiations physically took place in Boston. Even if physical presence in the forum state is not determinative, the nature of the contacts here are insufficient to vest this Court with jurisdiction over Bioriginal. See Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010) (finding insufficient relatedness between plaintiff's claims and defendant's in-forum actions where parties discussed promissory note over the phone); Byrne v. Brunswick Corp., No. 07-cv-43-JD, 2007 WL 1847309, at *1, *3 (D.N.H. Jun. 26, 2007) (allowing motion to dismiss for lack of personal jurisdiction where plaintiff asserted contract claim and negotiated terms of contract over the phone); Telford Aviation, Inc. v. Raycom Nat., Inc., 122 F. Supp. 2d 44, 47 (D. Me. 2000) (finding that an out-of-state defendant's multiple, documented contacts with the in-state plaintiff by mail, fax and phone were insufficient to vest the court with personal jurisdiction over the defendant).

        2.     *Bioriginal Did Not Purposefully Avail Itself of the Protections of Massachusetts Law*

The second prong of specific jurisdiction, purposeful availment, is the "lynchpin" of specific jurisdiction. Genzyme Corp. v. Shire Human Genetic Therapies, Inc., 906 F. Supp. 2d 9, 18 (D. Mass. 2012). To satisfy this prong, there must be some act or series of acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The purposeful availment test "focuses on the defendant's intentionality," and "is

only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Swiss Am. Bank, 274 F.3d at 623-24. Accordingly, the "[t]wo cornerstones of purposeful availment" are foreseeablility and voluntariness. Ticketmaster-New York, Inc., 26 F.3d at 208.

The fact that Bioriginal agreed to pay a Massachusetts resident "does not persuade [the Court] that [it] should have foreseen that he could be haled into court in Massachusetts." Adams, 601 F.3d at 7. "[A] defendant's entering into a contract with a resident of the forum state cannot automatically establish minimum contacts." Id. "[P]rior negotiations and contemplated future consequences, along with . . . the parties' actual course of dealing . . . must be evaluated in determining whether the defendant' has minimum contacts with the forum." Swiss Am. Bank, 274 F.3d at 621.

Here, Downer points to Johnson's visit to Boston as well as the parties' negotiations over the Letter Agreement through electronic and telephonic means. D. 12 at 10. As an initial matter, Johnson's association with the company was attenuated at best. Even if he held sway over the company's course of dealings as its principal investor, Downer has not identified any official position Johnson had within Bioriginal. In addition, even if the Court did consider Johnson a representative of Bioriginal, his contacts with Massachusetts were minimal. Ultimately, however, according to Vidal, "[n]o representatives from Bioriginal ever traveled to Massachusetts . . . in connection with the negotiation of the Letter Agreement." D. 10-1 ¶ 12. Absent such contacts, interstate communications by phone and mail are insufficient to demonstrate purposeful availment. R & B Splicer Sys., Inc. v. Woodland Indus., Inc., No.

12-11081-GAO, 2013 WL 1222410, at *1 (D. Mass. Mar. 26, 2013) (dismissing case where defendant was mere "passive purchaser" of goods shipped from Massachusetts).

At oral argument, Downer argued that Bioriginal was more involved in helping Downer provide its services to Bioriginal than a traditional "passive purchaser." Even if Bioriginal was more than the mere passive purchaser of goods from a company in Massachusetts, there is no suggestion of regular contact with Downer in Massachusetts or that its representative regularly visited Massachusetts even if there were interstate communications during the course of the formation and execution of the contract. See R & B Splicer Sys., Inc., 2013 WL 1222410, at *1 (noting that "the defendant did not solicit, regularly visit or supervise the plaintiff during the manufacturing process [in Massachusetts]," and although there were "interstate communications by phone and mail, no representative of the defendant ever visited Massachusetts," the contract was drafted by plaintiff and sent to the defendant out of state and all meetings were conducted out of state). For example, in Telford Aviation, the defendant, Raycom, contacted the plaintiff, Telford Aviation, seeking aircraft charter services for a plane based in Alabama. Id. at 45. The parties signed a contract governed by Alabama law under which Telford Aviation agreed to supply charter aircraft services to Raycom. Id. at 46. Raycom "repeatedly" contacted Telford Aviation's office in Maine by mail, fax and phone to make arrangements for charter flights. Id. The flights did not occur in Maine, but Telford scheduled all of the flights and handled the contracts from its Maine offices. Id. When Raycom did not pay for these services, Telford sued for non-payment. Id. The Court found there to be insufficient contacts to assert personal jurisdiction over Raycom, noting that "Raycom's contacts with Maine were fortuitous and resulted from Telford's decision to handle contracts and to schedule charter flights . . . from its

Waterville, Maine offices . . . Raycom's contacts did not create continuing obligations to Maine consumers, nor did Raycom benefit from the protections of Maine law through is phone calls and faxes." Id. at 47. Similarly here, Bioriginal made phone, e-mail and fax contacts "into" Massachusetts, and Downer completed the administrative work to provide Bioriginal with its services from Massachusetts, but Bioriginal did not enjoy the benefit of the contract inside Massachusetts. Accordingly, Bioriginal has not purposefully availed itself of the benefits of Massachusetts law.

Downer argues that when Bioriginal engaged Downer, Bioriginal knew that the engagement would result in Downer's performing significant activities in Massachusetts on Bioriginal's behalf. D. 12 at 12. These activities, Downer argues, created "continuing obligations" between Bioriginal and Massachusetts such that Bioriginal had a "substantial connection" with Massachusetts. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985)). However, this argument focuses on the plaintiff's actions, whereas the personal jurisdictional analysis focuses on the defendant's. See Telford Aviation, 122 F. Supp. 2d at 47; Lyle Richards Int'l Ltd., 132 F.3d at 113 (finding no personal jurisdiction where plaintiff performed significant work for the defendant in Massachusetts); Nichols Assocs., Inc. v. Starr, 4 Mass. App. Ct. 93, 96 (1976) (finding no personal jurisdiction where nonresident defendant's "contact [was] limited to the . . . acceptance of services which the plaintiff simply chose to perform in Massachusetts").

Ultimately, the benefit of the out-of-state work was to be felt in Canada and not in Massachusetts. Moreover, as the Supreme Court instructed in Burger King, a court's assertion of "jurisdiction is only proper where the contacts proximately result from actions by the

defendant <u>himself</u> that create a 'substantial connection' with the forum State." <u>Burger King</u>, 471 U.S. at 475 (emphasis in original). Here, Bioriginal's contacts are limited to its "de facto" chairman's trip to Boston prior to the parties' execution of the contract and the phone and e-mail; communications that courts have found insufficient to form the basis of personal jurisdiction. <u>See, e.g.</u>, <u>Telford Aviation</u>, 122 F. Supp. 2d at 47.

Cases addressing the attorney-client relationship are also instructive here. In <u>Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law</u>, 787 F.2d 7 (1st Cir. 1986), for example, the defendant law firm represented a New Hampshire resident in various matters, but all representation took place in Massachusetts. <u>Id.</u> at 9. In alleging a claim of legal malpractice, the client brought suit against the law firm in the District of New Hampshire. <u>Id.</u> at 8. The district court dismissed the case for lack of jurisdiction and the First Circuit affirmed the district court's determination, noting that although the injury was felt in New Hampshire, the conduct allegedly causing the injury was in Massachusetts, and accordingly, the law firm was not subject to jurisdiction in New Hampshire. <u>Id.</u> at 11. In this way, although a relationship between a client and its fiduciary may stretch across state lines, this does not mean that the out-of-state fiduciary, or as here, the out-of-state client, has purposefully availed itself of the protections of the state where the fiduciary has performed its services. This is especially true here, where the services that Downer performed were directed at a benefit to be felt by the company in Saskatchewan (and its investors in Canada) and not in Massachusetts, and where Downer's representation of Bioriginal was a "one-shot deal." <u>Clark v. Milam</u>, 830 F. Supp. 316, 323 (S.D. W.Va. 1993) (quoting <u>Sher v. Johnson</u>, 911 F.2d 1357, 1363 n.3 (9th Cir. 1990) (finding no personal jurisdiction over law firm partners where law firm was retained for single

legal matter in law firm's state) and citing Kowalski, 787 F.2d 7; Mayes v. Leipziger, 674 F.2d 178, 183-85 (2d Cir. 1992) (finding no personal jurisdiction in New York of California law firm who represented New York client from California); Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226-27 (8th Cir. 1987) (finding no personal jurisdiction over New York law firm in South Dakota where firm represented South Dakota business in Maryland patent litigation)) for the proposition that an out-of-state attorney's representation of an in-state client in an out-of-state matter does not establish personal jurisdiction).

Downer also argues that because the Letter Agreement stipulates that Downer agreed to be subject to jurisdiction in Saskatchewan, but that the clause did not require that disputes between the parties be litigated there, it was foreseeable that Bioriginal could be sued in Massachusetts. D. 12 at 12. Although "an affirmative conferral of personal jurisdiction by consent" is not a "negative exclusion of jurisdiction in other courts," Autoridad de Energia Electrica v. Ericsson, Inc., 201 F.3d 15, 18-19 (1st Cir. 2000), it appears from the parties' agreement that Bioriginal was trying to avoid – not consent to – jurisdiction in Massachusetts. It therefore cannot be reasonably concluded from this provision that Bioriginal either volunteered or necessarily foresaw being haled into a Massachusetts court. Ticketmaster-New York, Inc., 26 F.3d at 208.

Downer also points to the allegation that Bioriginal was initially founded as a Massachusetts corporation in 1986. D. 12 at 8. Downer notes that Bioriginal moved to Canada in 1993. Id. at 12 n.8. Bioriginal disputes that it has its origins in Massachusetts, arguing that its predecessor was not the Massachusetts entity Bioriginal Technologies, Inc., but was formed through the merger of two Canadian companies. D. 16 at 4 n.3. Nevertheless, even if

Bioriginal did have Massachusetts origins, jurisdictional contacts must exist at or near the time of filing of the summons and complaint. Andros Compania Maritima S.A. v. Intertanker Ltd., 714 F. Supp. 669, 675 (S.D.N.Y. 1989). Decades old contacts are clearly "too stale to be sufficient to obtain personal jurisdiction." Daniel v. Am. Bd. of Emergency Med., 988 F. Supp. 127, 227 (W.D.N.Y. 1997) aff'd, 428 F.3d 408 (2d Cir. 2005).

        3.    The "Gestalt Factors" Weigh Against Asserting Jurisdiction Over Bioriginal

Even if the first two parts of the test for specific jurisdiction are satisfied, courts must still determine whether the exercise of personal jurisdiction is reasonable in light of the so called "Gestalt factors," including: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3. Thus, even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, the Court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. See Burger King, 471 U.S. at 476-78; Ticketmaster-New York, Inc., 26 F.3d at 209-10. Accordingly, even if the Court had found the first two parts of the test for specific jurisdiction satisfied, Downer has failed to show the reasonableness of exercising such jurisdiction over Bioriginal.

Considering the Gestalt factors, the Court finds that "[b]ecause of its incidental connection with the controversy, Massachusetts does not have an especially strong interest in adjudicating this dispute. There is no doubt that there would be a significant burden placed on the defendant to marshal its defense here, as opposed to [Saskatchewan]. Most of the witnesses

would be from [Saskatchewan], and it would be an imposition to require them to travel to Massachusetts for trial. Moreover, this Court's subpoena power could not compel reluctant non-party witnesses resident in [Saskatchewan] to appear here." R & B Splicer Sys., Inc., 2013 WL 1222410, at *2; D. 10-1 ¶¶ 15-17 (describing Bioriginal's expected witnesses, all from Saskatchewan); see also Cate v. Pub. Serv. Enter. Grp., Inc., No. 06-CV-200-SM, 2007 WL 2437946, at *5 (D.N.H. Aug. 23, 2007) (finding no personal jurisdiction where "it is quite likely that a majority of the key witnesses reside outside of the state as well. Taken together, the Gestalt factors favor finding that New Hampshire is not an appropriate forum in which to litigate this case").

In addition, Downer can obtain convenient and effective relief in Saskatchewan, which recognizes causes of action for breach of contract and unjust enrichment and whose court of general jurisdiction has procedures substantially similar to those in Massachusetts courts. D. 10-3 ¶¶ 8-9. Courts have also found that the judicial system does not have a strong interest in hearing the dispute in a forum in which the most substantial portion of the conduct did not occur. Daniels Agrosciences, LLC v. Ball DPF, LLC, No. 13-268 ML, 2013 WL 5310208, at *13 (D.R.I. Sept. 20, 2013) (noting that "judicial economy would be better served in a jurisdiction where a substantial portion of the conduct occurred, which is not Rhode Island").

There is also some argument that the Section 8.2 of the Letter Agreement, D. 10-2 at 7, bears upon the reasonableness analysis. This provision provides that the parties agree that the agreement "is governed by and is to be construed in accordance with the laws in force" in Saskatchewan and "[b]oth Bioriginal and [Downer] agree to submit to the jurisdiction of the Saskatchewan courts as regards any claim, dispute, difference or matter arising out of or in

connection with this letter [agreement]."  At a minimum, this provision reflects that Saskatchewan law applies here and that the parties at least anticipated that litigation regarding the agreement might occur in another forum.  See Sheridan v. Ascutney Mountain Resort Services, Inc., 925 F. Supp. 872, 879 (D. Mass. 1996) (considering, in part, that "[t]he most effective resolution of the controversy appears to be in Florida, the law of which will apply"); cf. Lombard Med. Technologies, Inc. v. Johannessen, 729 F. Supp. 2d 432, 437 (D. Mass. 2010) (applying Gestalt factors and concluding that Massachusetts choice of law provision weighed in favor of Massachusetts court asserting jurisdiction).  Although, with diversity jurisdiction, federal district courts are in the regular practice of applying laws of other forums, the fact that Saskatchewan law applies to the claims and a court in that forum would be better suited to address such claims, at a minimum, weighs against the reasonableness of exercising personal jurisdiction over the defendant, particularly in addition to the other factors, previously discussed, that also weigh against the reasonableness of such finding.  Moreover, although the consent to jurisdiction in Saskatchewan certainly does not bar proper jurisdiction in any other forum, it at least suggests that the parties contemplated the notion that, at the very least, that forum had an interest in the resolution of their disputes.  Even if that interest is minimal, given the record now before the court regarding the nature of the claims and the course of the parties' conduct in the formation of the contract, it is at least greater than the interests of the forum state, particularly where no substantive policy (other than protecting the interests of a company based in Massachusetts) have been identified. Accordingly, the Gestalt factors counsel against this Court asserting jurisdiction.

## VI. Conclusion

For the foregoing reasons, Bioriginal's motion to dismiss, D. 9, is ALLOWED IN PART as to the lack of personal jurisdiction. In light of the Court's ruling on whether personal jurisdiction exists, the Court need not reach Bioriginal's motion to the extent it seeks dismissal on *forum non conveniens* grounds or to the extent it seeks dismissal of Downer's claim that Bioriginal has engaged in unfair or deceptive acts or practices in violation of Mass. Gen. L. c. 93A and that portion of the motion is DENIED AS MOOT.

**So ordered.**

/s/ Denise J. Casper
United States District Judge